UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

STEPHEN K. LANPHIER          *     CIVIL ACTION NO.  10-1074
                                   Section P

VERSUS                       *     JUDGE ROBERT G. JAMES

MADISON PARISH SHERIFF,       *     MAG. JUDGE KAREN L. HAYES
LARRY COX, ET AL.

REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, are three

motions for summary judgment:  1) motion for summary judgment [doc. # 60] filed by plaintiff

Stephen Lanphier; 2) motion for summary judgment [doc. # 58] filed by defendants, Richard

Stalder, James LeBlanc, and Linda Ramsey; and 3) motion for summary judgment [doc. # 62/66]

filed by defendants Larry Cox, Major A. Johnson, Captain J. Brooks; Sergeant Robert Sims; and

Nurse Oby.  The motions have been referred to the undersigned magistrate judge for report and

recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For reasons stated below, it is

recommended that plaintiff's motion for summary judgment [doc. # 60] be DENIED, and that

defendants' motions for summary judgment [doc. #s 58 & 62/66] be GRANTED.

Procedural History

On June 21, 2010, Stephen Lanphier, an inmate in the custody of Louisiana's Department

of Public Safety and Corrections ("LDOC"), filed the instant pro se civil rights complaint under

42 U.S.C. § 1983 against Madison Parish Sheriff Larry Cox and LDOC Secretary James

LeBlanc.  (Compl.).  From February 2006 until May 2, 2011, Lanphier was housed at the

Madison Parish Corrections Center, Tallulah, Louisiana ("MPCC").  (Lanphier Depo., pg. 9; Def. MSJ, Exh. 1 [doc. # 59]).  He complained that while confined at the MPCC he was exposed to environmental/second hand tobacco smoke ("ETS").  He further protested the lack of any rehabilitation programs at the facility.  Lanphier prayed for money damages, future medical expenses, and a transfer to another facility where he could obtain continuing education services. He also requested an injunction prohibiting defendants from retaliating against him for filing this suit.

On November 5, 2010, Lanphier amended his complaint to add as defendants former LDOC Secretary Richard Stalder; Linda Ramsey, an LDOC official; Jimmy Shivers (the now deceased, former warden at MPCC); Major A. Johnson, acting MPCC Warden; Capt. J. Brooks; Sgt. Robert Sims; and Nurse Oby, LPN.  (Amend. Compl. [doc. # 11]).  The amended complaint sets forth the following claims,

a.      **Exposure to Environmental Tobacco Smoke (ETS)**

Lanphier alleged that he is a non-smoker, and that he was transferred from the Iberia Criminal Justice Facility (a non-smoking facility) to MPCC on February 17, 2006.  MPCC permitted smoking until the latter part of 2007 when cigarettes and tobacco products were taken from the commissary.  However, in June 2009 cigarettes once again were made available for purchase in the prison commissary.  Plaintiff maintains that the institution is in violation of Louisiana R.S. 40:1300.256 which prohibits smoking in any state, local, or private correctional facility after August 15, 2009.

b.      **Due Process**

Plaintiff contends that he submitted an administrative grievance to LDOC official Linda

2

Ramsey demanding that he be allowed to participate in educational or rehabilitation programs for sex offenders; however, notwithstanding his complaints, MPCC still offers no such programs.

### c.    Access to Courts (Recent Issues)

In March 2007 plaintiff was given a prison job in the prison law library.  On January 15, 2009, Corrections Officer Freddie Brooks advised him that he no longer was employed there. According to plaintiff, Brooks told him that his dismissal was ordered by Warden Shivers and Major Johnson because of the suit filed by plaintiff against MPCC.  Plaintiff's requests to speak to the warden and Major Johnson were ignored.

Plaintiff was placed in D Dorm, but never accused of a disciplinary rules violation. Inmate Burns, a pre-trial detainee, was given plaintiff's job, even though Burns also had filed suit against MPCC.

Sometime in late 2009, plaintiff again was employed in the prison law library in the shift opposite inmate Burns.  Then in mid 2010, plaintiff was allowed to work both shifts.

On August 13, 2010, the United States Marshal served "papers" notifying Major Johnson, the acting warden, that suit had been filed against Sheriff Cox and Nurse Nolan.  Upon being apprised of the suit, Nurse Oby demanded a handwriting sample from plaintiff to compare with the suit papers that had been served.  Sometime thereafter, Corrections Officer Smith told plaintiff that his employment in the law library again was terminated and he was told to pack his belongings and leave the law library.  No disciplinary charges were brought against Lanphier.

When plaintiff returned to the dormitory, he spoke with inmate Clarence Moses.  Plaintiff had assisted Moses in filling out the papers served on Sheriff Cox and Nurse Nolan.  Once plaintiff returned to the Dorm, he was advised by Corrections Officer Sims that he was not

allowed to have all of his legal work in the Dorm because it did not fit into a foot locker.

Plaintiff was not afforded the opportunity to read through his papers to determine which were

needed.  The papers that did not fit in the foot locker were stored elsewhere.  According to

plaintiff, these papers consist of copies of a civil complaint filed against the sheriff and public

defenders in Calcasieu Parish and the Warden of the Iberia Criminal Justice Facility in *Lanphier*

*v. State of Louisiana*, Civil Action No. 2:06-cv-1490 (W.D. La.).[1]  Other documents relate to

plaintiff's Louisiana criminal conviction.

On August 27, 2010, plaintiff received the order from this court directing him to amend

his original civil rights complaint.  Plaintiff and two other inmates presented themselves to Sgt.

Sims and requested law library privileges.  Sims, however, under orders from Major Johnson,

advised plaintiff and inmate Clement that only inmate Montero had been afforded law library

access at that time.  When plaintiff brought the court order to Sims's attention, the officer

ignored plaintiff's demands and advised him that it was not plaintiff's turn to use the library.

Plaintiff was allowed, however, to spend two hours in the law library on September 23, 2010.

Plaintiff contends that the denial of access to the law library has interfered with this litigation,

with post-conviction litigation, and with his on-going criminal prosecution in Calcasieu Parish.

**d.      Access to Courts (Past Issues)**

Some time prior to December 6, 2007, plaintiff spoke to Lt. Brooks about having three

video tapes from his criminal trial sent to plaintiff.  Brooks advised plaintiff that the facility did

not have any VCR equipment.  Plaintiff then had the tapes transferred to DVD format; however,

when the DVDs arrived, the Warden advised him that the computer equipment in the library was

---

[1] The suit was dismissed on January 17, 2007.

not available for plaintiff to view the DVD.  Plaintiff requested that the DVDs be sent to plaintiff's home; however, as of November 2010, plaintiff contends that the items were not returned to his home address.

### e.      Malfeasance in Office and Slavery

Plaintiff worked in the prison law library from March 2007 until January 15, 2009, when he was dismissed.  According to plaintiff, no disciplinary charges were ever leveled against him. He subsequently returned to his law library position until August 13, 2010, when he again was discharged without having any disciplinary proceedings lodged.  Plaintiff argues that he was entitled to be paid for his services in the law library.

### f.      Grievances

According to plaintiff, he submitted grievances both at the local and state level; nonetheless, he never received any response.

### g.      Relief Requested

Plaintiff seeks compensatory, punitive, and nominal damages of $ 35 million, per category, per defendant.  He also seeks injunctive relief requiring defendants to 1) pay his future medical expenses; 2) transfer him to a non-smoking facility that offers rehabilitative programs; 3) refrain from retaliating against him; and 4) replace his missing and/or destroyed legal materials.

### h)      Commissary Privileges

On December 7 and 8, 2010, plaintiff filed  "supplemental complaints" in which he complained that although his father had deposited funds in his prison accounts, plaintiff's receipt of items ordered on November 3, 2010, from the prison commissary was delayed until November 19, 2010, because prison authorities erroneously froze his prison account after plaintiff was

afforded pauper status with regard to the instant litigation.  Plaintiff contends that the error was an act of retaliation for this litigation and he prayed for an investigation and for the filing of criminal charges against those responsible for the delay.

On February 18, 2011, the undersigned determined that plaintiff sufficiently pleaded a cause of action, and ordered service on defendants Sheriff Larry Cox, LDOC Secretary James LeBlanc, Major A. Johnson, Capt. J. Brooks, Sgt. Robert Sims, and Nurse Oby.  (Feb. 18, 2011, Mem. Order [doc. # 22]).  By October 12, 2011, all defendants had made appearances herein, including the three defendants (Stalder, Ramsey, and Shivers) whom the court declined to serve. Thereafter, in accordance with the court's instructions to either file a motion for summary judgment or, alternatively, a statement of issues, all parties implemented the former option, and joined in one of the following motions for summary judgment:  1) motion for summary judgment [doc. # 60] filed by plaintiff Stephen Lanphier; 2) motion for summary judgment [doc. # 58] filed by defendants, Richard Stalder, James LeBlanc, and Linda Ramsey (collectively, "LDOC defendants"); and 3) motion for summary judgment [doc. # 62/66] filed by defendants, Larry Cox, Madison Parish Sheriff; Major Johnson Captain Brooks; Sergeant Sims; and Nurse Oby (collectively, "MPCC defendants").  Following delays for briefing, the matter is now before the court.

### Summary Judgment Principles

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby,*

6

*Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2511 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).  "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."  *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).  Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate.  *Id*.

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor.  *Anderson*, 477 U.S. at 255.  "The court *need* consider only the cited materials, but it *may* consider other materials in the record."  Fed.R.Civ.P. 56(c)(3) (emphasis added).  While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  There can be no genuine issue as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.*, 477

U.S. at 322-23.  This is true "since a complete failure of proof concerning an essential element of

the nonmoving party's case necessarily renders all other facts immaterial."  *Id*. at 323.

When a movant bears the burden of proof on an issue, it must establish "beyond

peradventure[2] all of the essential elements of the claim . . . to warrant judgment in [its] favor."

*Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  In other words, the movant must

affirmatively establish its right to prevail as a matter of law.  *Universal Sav. Ass'n v. McConnell*,

1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

<u>Analysis</u>

Defendants assert various grounds to support dismissal of plaintiff's complaint,

including, *inter alia*, failure to exhaust administrative remedies, prescription, qualified immunity,

failure to state a constitutional violation, and qualified immunity.  The court observes that

> [w]hen the defendant raises exhaustion as an affirmative defense, the judge should
> usually resolve disputes concerning exhaustion prior to allowing the case to
> proceed to the merits. If the plaintiff survives summary judgment on exhaustion,
> the judge may resolve disputed facts concerning exhaustion, holding an
> evidentiary hearing if necessary. Then, if the judge determines that the plaintiff
> has exhausted administrative remedies or that his or her failure to exhaust should
> be excused, the case may proceed to the merits.

*Dillon v. Rogers*, 596 F.3d 260, 270-273 (5th Cir. 2010).  (footnote omitted).[3]

Accordingly, the court will first consider defendants' exhaustion defense.

**I.      Exhaustion of Administrative Remedies**

a)      <u>Law</u>

-------

[2]  I.e., beyond doubt.

[3]  The Fifth Circuit reaffirmed that the exhaustion affirmative defense may be addressed
in the context of a motion for summary judgment where the non-moving party enjoys the
protections of Federal Rule of Civil Procedure 56.  *Id*.

Pursuant to 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act
("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of
this title or any other Federal law by a prisoner confined in any jail, prison, or other correctional
facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).
Exhaustion is mandatory, and is required even where the relief sought cannot be granted by the
administrative process.  *Woodford v. Ngo*, 548 U.S. 81, 85, 126 S.Ct. 2378, 2382-83 (2006)
(citations omitted).  All "available" remedies must be exhausted, whether speedy and effective,
or not.  *Porter v. Nussle*,  534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002).  "Proper exhaustion
requires that the prisoner not only pursue all available avenues of relief but also comply with all
administrative deadlines and procedural rules."  *Johnson v. Kukua*, 342 Fed. Appx. 933, 934 (5th
Cir. Aug. 20, 2009) (unpubl.) (citing *Woodford v. Ngo*, 548 U.S. at 89-93, 126 S.Ct. 2378)).  An
untimely or otherwise procedurally defective administrative grievance does not satisfy the
exhaustion requirement.  *Id*.

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life,
whether they involve general circumstances or particular episodes, and whether they allege
excessive force or some other wrong."  *Porter, supra* (citation omitted) (emphasis added).  An
inmate is required to "exhaust his remedies, irrespective of the form of relief sought, injunctive
or monetary."  *Richbourg v. Horton*, 2008 WL 5068680 (5th Cir. Dec. 2, 2008) (unpubl.) (citation
omitted).  Exhaustion also applies to claims brought against defendants in their official and/or
individual capacities.  *See e.g., Williams v. Henagan*, 595 F.3d 610, 618 (5th Cir. 2010); *Hines v.
Texas*, 76 Fed. Appx. 564 (5th Cir. Sept. 29, 2003) (unpubl.).

The Fifth Circuit has consistently held that an inmate's ignorance of a prison's grievance

procedures does not excuse his noncompliance.  *Aguirre v. Dyer*, 233 Fed. Appx. 365 (5th Cir.

May 24, 2007) (unpubl.) (citation omitted); *Simkins v. Bridges*, 350 Fed. Appx. 952, 953-954,

(5th Cir. Oct. 28, 2009) (unpubl.) (citation omitted); *Plaisance v. Cain*, 374 Fed. Appx. 560, 561,

( April 15, 2010) (unpubl.) (citation omitted).  Nonetheless, inmates should have "avenues for

discovering the procedural rules governing their grievances."  *Dillon, supra*.  When an inmate

has no means of verifying the administrative grievance process, then misleading information by

prison officials may make remedies unavailable.  *Id.*

Exhaustion is an affirmative defense; thus, the burden is on defendant to establish that

plaintiff failed to exhaust available administrative remedies.  *Dillon*, 596 F.3d at 266.  If the court

considers evidence beyond the pleadings to resolve the exhaustion issue, then the nonmoving

party is entitled to the protections of Rule 56.  *Id.*

b)      The MPCC Had an Available Administrative Remedy Procedure

 Under Louisiana law, the LDOC and each sheriff are authorized to adopt an

administrative remedy procedure at each of their institutions.  La. R.S. 15:1171.  The

administrative remedy procedure is intended to resolve complaints and grievances that arise

while the offender is in the custody of, or under the supervision of the department or sheriff.  *Id*.

The procedure encompasses complaints and grievances for monetary, injunctive, declaratory, or

other relief stemming *inter alia* from conditions of confinement, personal injuries, and medical

malpractice.  *Id*.  These administrative procedures, when promulgated, provide the offender's

exclusive remedy – to the extent that federal law permits.  *Id*.

In support of their motion for summary judgment, defendants did not adduce any

affidavits to establish the grievance process in effect at the MPCC.  Instead, they rely upon

10

plaintiff's own testimony.  The court further notes that, according to plaintiff's complaint, the MPCC had a prison grievance procedure; however, prison officials simply would not respond to plaintiff's grievances.  (Compl., pg. 2).  Plaintiff attached to his complaint a blank inmate grievance form, which specified that the inmate must send the form to the warden within 30 days of the incident that sparked the complaint.  (Inmate Grievance Form; Compl., Exh. A).  The form further indicated that if the inmate did not receive a response within 30 days, then he could file a request for review by the warden.  *Id*.[4]

In sum, plaintiff's complaint establishes that the MPCC had at least a one-step administrative remedy procedure that plaintiff was cognizant of by the time he filed the instant suit.

c)   <u>Plaintiff Failed to Invoke the Grievance Process for his Claims for ETS Exposure and for Retaliatory Denial of Access to the Library</u>

As stated earlier, because exhaustion is an affirmative defense, it is defendant's burden to establish that plaintiff failed to exhaust available administrative remedies.  Here, the only evidence that defendant adduced regarding exhaustion was plaintiff's deposition testimony, in which he was questioned about his claims for ETS exposure and retaliatory denial of access to the library.  Specifically, plaintiff stated that although he had filed "other grievances," he never filed a written complaint concerning the smoking in the dormitory.  (Lanphier Depo., pgs. 13-15; LDOC MSJ, Exh. 1).  Plaintiff explained that he did not do so because the authorities never

_____

[4] Plaintiff also attached to his complaint a document entitled "Louisiana Administrative Remedy," which was addressed to Internal Affairs, the Department of Corrections.  (La. Admin. Remedy; Compl., Exh. B).  The letter complained about the difficulties that Lanphier experienced in 2007 while trying to view video tapes and compact discs related to his criminal conviction.  *Id*.  The letter is dated December 27, 2007.  *Id*.

responded to grievances; i.e., it was a waste of time.  *Id.*  Plaintiff further conceded that he did

not file a written grievance after defendants retaliated against him by denying him access to the

law library.  *Id.*, pg. 27.  In other words, plaintiff contends that he did not file grievances – at

least in these two instances – because he thought that it would be futile to do so.  Futility,

however, is not a valid exception to the exhaustion requirement.  *Hicks v. Lingle*, 370 Fed. Appx.

497 (5th Cir. March 17, 2010) (unpubl.) (citing *Booth v. Churner*, 532 U.S. 731, 739-41 & n. 6,

121 S.Ct. 1819, 149 (2001).

> d)   Plaintiff's Failure to Exhaust Requires Dismissal of his Unexhausted Claims
>       Without Prejudice, but With Prejudice to his Right to Re-file In Forma Pauperis

The plain language of the PLRA precludes any further action on plaintiff's unexhausted

claims until he has fully exhausted the administrative remedy procedure.  *See Wendell v. Asher*,

162 F.3d 887, 890-91 (5th Cir.1998) (§ 1997e(a) "plainly requires that administrative remedies

be exhausted before the filing of a § 1983 suit, rather than while the action is pending . . . [t]o

hold otherwise would encourage premature filing by potential litigants, thus undermining

Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from

frivolous prisoner litigation.").

Although dismissal for failure to exhaust administrative remedies is typically without

prejudice,[5] the court is authorized to dismiss plaintiff's complaint with prejudice to his right to

re-file it in forma pauperis ("IFP"):

> [b]y choosing to file and pursue his suit prior to exhausting administrative
> remedies as required, [plaintiff] sought relief to which he was not entitled-that is,
> federal court intervention in prison affairs prior to the prison having had the

---

[5]  *See e.g., Plaisance v. Cain, supra*; *Cooper v. Quarterman*, 342 Fed. Appx. 12, 13 (5th
Cir. July 14, 2009) (unpubl.).

> opportunity to address the complaint within its grievance procedures. We therefore affirm the district court's order dismissing [plaintiff]'s action with prejudice for purposes of proceeding IFP.

*Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998) (overruled by implication on other grounds by *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 920-21 (2007)).

The foregoing approach is appropriate here.

Accordingly, if plaintiff exhausts his administrative remedies with respect to his claims for exposure to ETS and for retaliatory denial of access to the library, he may present these § 1983 claims again, but may not proceed *in forma pauperis* to do so.[6]

## II.    Warden Jimmy Shivers is not a Proper Party Defendant

According to plaintiff's complaint, Warden Shivers passed away some time in 2010. Therefore, he is not a proper party to this suit, and must be dismissed.  *See Thompson v. Radosta*, 895 F. Supp. 113, 115 (E.D. La. 1995) (citations omitted).[7]

## III.    Plaintiff's Remaining Claims are not Cognizable under the U. S. Constitution

a)    <u>Lack of Rehabilitation/Educational Programs</u>

Plaintiff contends that he was not afforded the opportunity to participate in educational, vocational, or other rehabilitation programs, and that he was wrongfully terminated from his prison job in the prison law library.

---

[6] Of course, administrative exhaustion requires "proper" exhaustion, i.e., compliance with an agency's deadlines and other critical procedural rules.  *Woodford, supra*.  At this point, plaintiff's delay effectively may foreclose his ability to properly exhaust available administrative remedies.  *See* Inmate Grievance Form; Compl., Exh. A) (requiring the grievance to be filed within 30 days of the incident).

[7] Subject to several exceptions not applicable here, Rule 17(b) of the Federal Rules of Civil Procedure provides that capacity to sue or be sued is determined "by the law of the state where the court is located . . ."  Fed.R.Civ.P. 17(b)(3).  Under Louisiana law, the succession representative is the proper defendant in an action to enforce an obligation of the deceased.  La. Code Civ. P. Art. 734.

It is axiomatic that "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250 (1988). Plaintiff's avenues for redress under federal law potentially arise under either the Due Process Clause of the Fourteenth Amendment or the prohibition against cruel and unusual punishment embodied in the Eighth Amendment. With regard to the former provision, the Supreme Court explained a few years ago that

> [t]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake. A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word "liberty," or it may arise from an expectation or interest created by state laws or policies.

*Wilkinson v. Austin*, 545 U.S. 209, 221-23, 125 S. Ct. 2384, 2393-94 (2005) (internal citations omitted).

Furthermore, "it is clear that the touchstone of the inquiry into the existence of a protected state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions, but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Id*. (citation omitted).

An inmate's claim that prison authorities violated state prison regulations or statutes does not support a § 1983 suit unless the violations produce conditions that are "atypical and [a] significant hardship . . . in relation to the ordinary incidents of prison life." *Boudreaux v. Foti*, 68 F.3d 472 (5th Cir. 1995) (citing *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 2300 (1995. Accordingly, prisoners no longer may peruse statutes or prison regulations in the hope of finding mandatory language to support a due process liberty claim. *Bulger v. U.S. Bureau of*

*Prisons*, 65 F.3d 48, 49-50 (5th Cir. 1995) (citation omitted).  Nonetheless, examination of state statutes and regulatory schemes remains relevant for purposes of discerning a protectible property interest because that type of claim requires plaintiff to establish, not that he expects a benefit, but that he is entitled to it.  *Id.*  (citing *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 (1972).

Applying the foregoing principles here, it is manifest that defendants' actions (or inaction) do not transgress the Fourteenth Amendment.  Neither the Due Process Clause, nor any other provision of the Constitution affords prisoners the constitutional right to educational or rehabilitative services or programs.  *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir.1988); *see also Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir.1991) (prisoners do not have a constitutional right to "social services."); *Newman v. State of Alabama*, 559 F.2d 283, 292 (5th Cir.1977), rev'd in part on other grounds *sub nom., Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057 (1978) (prisoners do not possess a protected liberty interest in educational programs, recreation opportunities, or in avoidance of being transferred to facilities where the programs are less comprehensive); *Bulger, supra* (no federal constitutional right to participate in an education or rehabilitative program while incarcerated); *Moody v. Doggett*, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274 (1976) (Prisoner classification and eligibility for rehabilitation programs are not subject to "due process" protections).

Plaintiff contends that the lack of rehabilitation and/or educational opportunities transgresses various state laws such as Louisiana Revised Statutes 15:828A(1) & (2), 14:134(1)

and (2); and 14:329.5.[8]  Although Louisiana Revised Statute 15:828 directs the LDOC to endeavor to rehabilitate prisoners and sex offenders via educational programs and job training, the statutory scheme does not *entitle* plaintiff to any benefit sufficient to create a property interest, because it remains  expressly contingent upon "available resources," – an all-to speculative condition, especially in these times of fiscal austerity in public spending.  *See* La. R.S. 15:828A & B.  Moreover, the withholding of such programs does not create a cognizable liberty interest because it does not produce conditions that are "atypical and [a] significant hardship . . . in relation to the ordinary incidents of prison life."  *See Boudreaux, supra*.

To the extent that plaintiff's access to programs is dependent upon the facility where he is housed, the court notes that plaintiff remains an LDOC inmate and therefore his placement is solely within the purview of the LDOC.[9]  Prison administrators are afforded broad discretionary authority because the administration of a prison is "at best an extraordinarily difficult undertaking."  *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979 (1974).  To hold  that

---

[8]  The latter provisions criminalize malfeasance in office and interference with the educational process at *schools*.  La. R.S. 14:134, *et seq*.; La. R.S. 329.5.  It is manifest, however, that the mere violation of state law does not state a constitutional claim under 42 U.S.C. § 1983.  *Brown v. Williams*, 124 F. App'x 907, 909 (5th Cir. 2005) (citing *Giovanni v. Lynn*, 48 F.3d 908, 912-13 (5th Cir.1995)).

[9]  According to state law,
any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Louisiana Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The director of corrections shall assign each newly committed inmate to an appropriate penal or correctional facility. The director may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training and security needs established by the department . . .
La. R.S.15:824(A).

any substantial deprivation imposed by prison authorities triggers the procedural protections of

the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions

that traditionally have been the business of prison administrators rather than of the federal courts.

*Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538 (1976).  Furthermore, prisoners

simply do not have a constitutionally derived liberty interest in being held in any particular

institution.  *Id*.; *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741 (1983); *Adams v. Gunnell,*

729 F.2d 362, 368 (5th Cir.1984).[10]

  Inmates also do not a have a protected property or liberty interest in prison employment.

*Jackson v. Cain*, 864 F.2d 1235, 1250 (5th Cir.1989); *Moody v. Baker*, 857 F.2d 256, 257-58 (5th

Cir.1988); *Bulger, supra* (inmate's expectation of keeping a job, or any job, does not implicate a

protectible due process interest).  To the extent that plaintiff contends that defendants deprived

him of his position in the prison law library as an act of retaliation, that claim too, lacks a basis in

fact or law.

  "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional

---

[10]  Insofar as plaintiff's complaint may be construed to raise an equal protection challenge to his assignment to a facility that does not offer rehabilitation/educational classes, disparate impact alone does not suffice to state an equal protection violation.  *Johnson v. Rodriguez*, 110 F.3d 299, 306-307 (5th Cir. 1997) (citation omitted).  Moreover, if "the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action----even if irrational----does not deny them equal protection of the laws." *Id.* (citation omitted).  Here, however, there is no indication that defendants are making housing decisions based upon impermissible classifications.

  Likewise, defendants' failure to provide plaintiff with the types of services that he desires does not implicate the Eighth Amendment.  The lack of rehabilitative programs does not by itself constitute cruel and unusual punishment, nor does the Eighth Amendment require the provision of every amenity needed to avoid mental, physical, or emotional deterioration.  *See Alberti v. Klevenhagen*, 790 F.2d 1220, 1228 (5th Cir. 1986) (citing, *Newman v. Alabama*, 559 F.2d 283, 291 (5th Cir.1977)).

right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). Prisoners are constitutionally protected from retaliation for complaining about a prison official's actions. *See Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir.1995); *Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir.1989). Accordingly, plaintiff has satisfied the first element of his retaliation claim.

For purposes of the remaining elements, the court notes that causation requires evidence that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods, supra* (citations omitted). Plaintiff's mere belief that he was the victim of retaliation will not suffice. *Johnson v. Rodriguez*, 110 F.3d 299, 310 -311 (5th Cir. 1997) (citation omitted). Rather, "[t]he inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Woods*, 60 F.3d at 1166 (citation omitted). Either way, plaintiff's burden is significant. *Id*. Finally, the retaliatory act must be more than *de minimis*, that is, the challenged conduct is actionable "only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006).

Applying the foregoing principles to the facts at hand, the court finds that plaintiff has not adduced evidence sufficient to establish causation or that defendants intended to retaliate against him. Plaintiff's allegations concerning the motive for being terminated from his job in the prison law library are speculative. The facts alleged indicate that he was restored to his prison job while his prisoner suits were still pending. Moreover, the temporary loss of his prison job did not dissuade plaintiff from exercising his constitutional rights because he, in fact, continued to

18

exercise those rights.  Furthermore, plaintiff admitted that another inmate was allowed to retain

his employment in the prison law library notwithstanding the fact that he too had filed a prisoner

civil rights complaint.

b)    <u>Work without Pay/Slavery</u>

 Prisoners do not enjoy a constitutional right to be paid for work performed in prison.

*Wendt v. Lynaugh*, 841 F.2d 619 (5th Cir.1988).  As the Fifth Circuit Court has emphasized,

"[c]ompelling an inmate to work without pay is not unconstitutional.  The Thirteenth

Amendment specifically allows involuntary servitude as punishment after conviction of a crime,

and this Court has held that compensating prisoners for work is not a constitutional requirement

but, rather, is by the grace of the state."  *Murray v. Mississippi Department of Corrections*, 911

F.2d 1167, 1167-68 (5th Cir.1990) (citations and quotation marks omitted); *see also Loving v.*

*Johnson*, 455 F.3d 562, 563 (5th Cir.2006).  Plaintiff's wage claim is not actionable.

c)    <u>Grievances</u>

Plaintiff complains that defendants failed to respond to his grievances.  Prisoners,

however, do not have a federally-protected right to have grievances investigated and resolved.

*Sandin, supra*.  Any right to a grievance procedure stems from state law or regulation, the

transgression of which does not offend constitutional *minima*.  *See Taylor v. Cockrell*, 2004 WL

287339 at *1 (5th Cir. Feb.12, 2004) (unpubl.); *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005).

d)    <u>Access to Courts</u>

Plaintiff also asserted that defendants interfered with his right of access to the courts. "It

has long been recognized that prisoners generally enjoy the constitutional right of access to the

court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999).  The right of access to the court is

19

not unlimited, however, and includes "only a reasonably adequate opportunity" for the prisoner to file nonfrivolous legal claims challenging his conviction or his conditions of confinement.  *Id.* (citations omitted).  Put another way, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court."  *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993) (citations omitted).

Plaintiff contends that defendants thwarted his ability to view DVDs or CDs related to his underlying criminal conviction.  According to plaintiff, however, these events transpired in 2007.  Because 42 U.S.C. § 1983 does not include its own statute of limitations, the courts must borrow the personal injury limitations period from the forum state.  *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992) (citation omitted).  In Louisiana, delictual actions are subject to a liberative prescription period of one year.  La. Civ. Code Art. 3492.  Although state law governs the limitations period and tolling exceptions, federal law determines when a cause of action arises.  *Jackson, supra* (citation omitted).  "A cause of action under § 1983 accrues when the aggrieved party knows, or has reason to know of, the injury or damages which form the basis of the action."  *Ramon v. Rodriguez-Mendoza*, 372 Fed. Appx. 494 (5th Cir. April 1, 2010) (unpubl.) (citing *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir.1995)).

Here, by December 2007, plaintiff was well aware of his inability to access certain DVDs and/or CDs for purposes of challenging his criminal conviction.  In fact, he filed a grievance about the issue at that time.  (Compl., Exh. B).  Nonetheless, he did not file the instant suit until June 2010.  Accordingly, his claim stemming from these past issues is time-barred.  La. Civ. Code Art. 3492.

Insofar as plaintiff's claim for denial of access to the courts implicates more recent events, he still has not shown how his ability to prepare and transmit legal documents to this court, or any other court, has been materially inhibited.  Indeed, plaintiff's substantial filings in this case belie such a contention.

Further, to prevail on a claim that he was denied his constitutional right of access to the courts, plaintiff must "demonstrate[ ] that his position as a litigant was prejudiced by his denial of access to the court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir.1996) (*per curiam*) (citing *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993)). This requirement that a claimant show "actual injury"  is "not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354.  The Supreme Court, discussing the "actual injury" requirement held that: "The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  *Id.* at 355.  The Court further held that this right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Id.*

Plaintiff has not shown that the complained of conduct in any way deprived him of the ability to transmit legal documents to this or any other court; further, he has not shown that the acts or omissions of the defendants materially prejudiced him with regard to past or pending prisoner litigation.  *See Lockamy v. Dunbar*, 399 F. App'x 953, 955 (5th Cir. 2010) (unpubl.) (plaintiff provided no concrete evidence to establish that defendants' actions prejudiced the

21

progression of his current cases).

     e)     <u>Commissary Privileges</u>

Plaintiff complains that he was wrongfully denied purchases from the commissary for the period between November 3 -19, 2010. Again, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

To the extent that plaintiff contends that the 16 day deprivation of commissary privileges violated his rights to due process as guaranteed by the Fourteenth Amendment, such contention is baseless.  State-created liberty interests protected by the Due Process Clause are generally limited to freedom from restraint imposing an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.  *Sandin, supra*.  The loss of commissary privileges does not represent the type of atypical, significant deprivation which might implicate a liberty interest. *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir.1997).

Further, to the extent that plaintiff maintains that the denial of commissary privileges implicates the Eighth Amendment's prohibition of cruel and unusual punishment, again, his claim fares no better.  "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999) quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995).

Under the Eighth Amendment, prison officials are required to provide humane conditions

of confinement, ensuring that inmates receive adequate food, clothing, shelter and medical care; and, they must take reasonable measures to guarantee the safety of the inmates in their custody. *See Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970 (1994).  Plaintiff has not identified a constitutionally protected right to commissary privileges.  Indeed, those courts which have considered the issue have arrived at the conclusion that there is no such right.[11]  In other words, plaintiff's allegations, taken as true, fail to establish a violation of the Constitution and laws of the United States.

Plaintiff also implied that his loss of commissary privileges was in retaliation for filing this suit.  As stated earlier, prisoners are constitutionally protected from retaliation for complaining about a prison official's actions.  *See Woods, supra*.  Nevertheless, some retaliatory acts "are so *de minimis* that they would not deter the ordinary person from further exercise of his rights.  Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim." *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir.2006).  Here, plaintiff implied that his commissary privileges were suspended for a short period of time.  This does not rise to the level of actionable retaliation.

    f)    <u>Handwriting Comparison</u>

Plaintiff contends that Nurse Oby violated his rights by acting outside the scope of her job description and impersonating a peace officer.  Again, however, the mere violation of state law

---

[11] *Compare Ward v. Oliver*, 1994 WL 66652, *3 (7th Cir.1994) (Eighth Amendment contemplates only shelter, sanitation, food, personal safety, medical care, and clothing and does not dictate access to particular commissary items); *Allen v. DeTella*, 1997 WL 106098, *4 (N.D. Ill. 1997) (commissary restrictions on particular foods did "not constitute atypical and significant hardships on an inmate"); *Davie v. Wingard*, 958 F.Supp. 1244 (S.D. Ohio 1997) (denial of commissary privileges did not state a claim under the Eighth Amendment).

does not create a constitutional remedy under 42 U.S.C. § 1983.  *See Brown, supra.*  Moreover, if, as the Fifth Circuit has held, the collection of a DNA sample does not violate a felon's constitutional right to privacy, *a fortiori*, asking an inmate for a handwriting sample also passes constitutional muster.  *See Velasquez v. Woods*, 329 F.3d 420, 421 (5th Cir.2003).

## IV.  Qualified Immunity

Defendants also invoke the affirmative defense of qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoted sources omitted).  When a defendant invokes qualified immunity, the burden shifts to plaintiff to establish that the defense is inapplicable.  *Id.*  (citation omitted).  Plaintiff's burden is two-pronged.  *Id.*  First, he must demonstrate that defendants violated a constitutional right under current law.  *Id.*  "Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of."  *Id.*  (quoted source and internal quotation marks omitted).  The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (*citing Pearson v. Callahan*, 808 U.S. 2009, 129 S.Ct. 808  (2009)).

In the case *sub judice*, plaintiff has not shown that defendants violated his constitutional rights.  His reliance on theory, speculation, and conclusory allegations does not suffice to

overcome defendants' defense of qualified immunity.  *Lockamy*, 399 F. App'x at 956-57.[12]

## V.  Government Entity and Supervisory Liability

Official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985) (citing, *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55 (1978)).  To impose § 1983 liability against a government entity for the misconduct of one of its employees or officers, plaintiff must demonstrate that the constitutional deprivation was caused by a policy or custom of the entity.  *Kohler v. Englade*, 470 F.3d 1104, 1115 (5th Cir. 2006) (citing *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690-691, 98 S.Ct. 2018, 2036 (1978)).  "In a Section 1983 case, the burden of proving the existence of an unconstitutional municipal policy or established custom rests upon the plaintiff."  *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989).

In the case *sub judice*, plaintiff has not established an underlying constitutional violation by any defendant in his or her individual capacity.  *See* discussion, *supra*.  *A fortiori*, he has not identified a precipitating unconstitutional custom or policy enacted by the government entity.  *See Bustos v. Martini Club Inc.*, 599 F.3d 458, 467 (5th Cir. 2010) (because the officers did not violate plaintiff's constitutional rights, neither did the city).

Insofar as plaintiff seeks to hold the warden, the sheriff, or the LDOC director liable in their supervisory capacities, the court emphasizes that supervisors can be held liable when the

---

[12]  In any event, qualified immunity analysis is largely superfluous in this case because the defense only applies "as a protective shield once a plaintiff has made out a claim against an official acting in his individual capacity."  *Goodman v. Harris County*, 571 F.3d 388, 396 (5th Cir. 2009).

"enforcement of a policy or practice results in a deprivation of federally protected rights."
*Bustos, supra* (citation omitted).   Again, however, because plaintiff has failed to allege or
establish a constitutional violation by the individuals directly involved in the challenged activity,
he cannot show that any supervisor implemented a policy or custom that violated his
constitutional rights.  *Bustos*, 599 F.3d at 468.

## VI.   Non-Argued Grounds for Dismissal

To the extent that all defendants did not join in the arguments and grounds that support
the proposed disposition of plaintiff's § 1983 claim, herein, the court notes that when a defending
party establishes that plaintiff has no cause of action, this defense generally inures to the benefit
of the remaining defendants.  *See Lewis v. Lynn*, 236 F.3d 766, 768, 236 F.3d 766 (5th Cir. 2001)
(citations omitted).  Furthermore, the court may grant summary judgment *sua sponte* so long as
the adverse party receives adequate notice and a reasonable time to respond.  Fed.R.Civ.P. 56(f);
*Stingley v. Den Mar Inc.*, 2009 WL 2762374, *3 (5th Cir. Sept. 1, 2009) (unpubl.) (citing *inter
alia*, *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 770-71 (5th Cir.2000)).  The instant report and
recommendation provides adequate notice to the parties.  *McCoy v. Wade*, 2007 WL 1098738,
*1 (W.D. La. Mar. 12, 2007) (citing *Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir.1998)).

## VII.   Plaintiff's Motion for Summary Judgment

In his motion for summary judgment, plaintiff does not dwell on the merits of his
complaint.  Rather, he contends that he did not receive discovery responses from counsel for the
MPCC defendants.  Indeed, the MPCC defendants do not appear to contest this charge.  *See*
Defs. Response [doc. # 71].  However, plaintiff did not file a timely motion to compel defendants
to respond to his discovery requests.  *See* Feb. 18, 2011, Mem. Order [doc. # 22] (motions to

compel are due within 90 days of defs' first appearance).

Moreover, if plaintiff harbored credible concerns concerning his ability to respond to defendants' motions for summary judgment, his remedy was to submit an affidavit or declaration setting forth reasons why he could not adduce facts to oppose the motion for summary judgment. Fed.R.Civ.P. 56(d).  A non-movant seeking relief under Rule 56(d) must demonstrate:  "(1) why he needs additional discovery and (2) how that discovery will create a genuine issue of material fact.  A party cannot evade summary judgment simply by arguing that additional discovery is needed, and may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts."  *Adams v. Travelers Indem. Co. of Connecticut*,  465 F.3d 156, 162 (5th Cir. 2006) (citations and internal quotation marks omitted).  Because plaintiff did not comply with Rule 56(d), summary judgment may be entered if otherwise appropriate.  *See McCreless v. Moore Business Forms Inc.*, 1997 WL 157005 (5th Cir. Mar. 26, 1997) (unpubl.) (citation omitted).  Furthermore, as the court's proposed resolution of the pending motions turns on issues of law, there are no material fact issues that are amenable to additional discovery.  *See Hunt v. Johnson*, 90 F. App'x 702, 704 (5th Cir. 2004) (unpubl.) (citation omitted).

## VIII.   State Law Claims

Plaintiff's complaint, as amended, appears to seek additional relief under state law. When, as recommended here, all constitutional claims that conferred federal subject matter jurisdiction are dismissed, the court may decline to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. § 1367.[13]  In fact, this is the general rule.  *Priester v.*

---

[13]    In the case *sub judice*, there is no indication that the court may exercise diversity jurisdiction, 28 U.S.C. § 1332.

*Lowndes County*,  354 F.3d 414, 425 (5th Cir. 2004) (citation omitted).  The twin interests of comity and judicial efficiency dictate that any remaining state law claims be dismissed without prejudice.  28 U.S.C. § 1367(c).[14]

<u>**Conclusion**</u>

For the reasons discussed above, the court finds that there are no genuine issues of material fact and that defendants are entitled to judgment as a matter of law.  Fed.R.Civ.P. 56. Accordingly,

**IT IS RECOMMENDED** that the motion for summary judgment [doc. # 60] filed by plaintiff Stephen Lanphier be **DENIED**.

**IT IS FURTHER RECOMMENDED** that plaintiff's claims against Warden Jimmy Shivers be **DISMISSED**.

**IT IS FURTHER RECOMMENDED** that the motions for summary judgment [doc. #s 58 & 62/66] filed by defendants, Richard Stalder, James LeBlanc, Linda Ramsey, Larry Cox, Major A. Johnson, Cpt. J. Brooks, Sgt. Robert Sims, and/or Nurse Oby, be **GRANTED**:  1) **DISMISSING, without prejudice**, plaintiff's federal law claims for exposure to ETS and for retaliatory denial of access to the library, on the merits, but **DISMISSING, with prejudice**, said claims for purposes of proceeding in forma pauperis pursuant to 28 U.S.C. § 1915(d); 2) **DISMISSING, with prejudice**, plaintiff's remaining claims arising under the Constitution and laws of the United State; and 3) **DISMISSING, without prejudice**, any remaining state law claims.

---

[14]  The limitations period is tolled for a minimum of 30 days after dismissal.  *See* 28 U.S.C. § 1367(d).

28

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 9th day of April 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE